```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
LEON SMITH,                          :
                                     :
             Petitioner,             :     05 Civ. 5485 (BSJ)(JCF)
      v.                             :
                                     :
DAVID ROCK, SUPERINTENDENT           :              ORDER
GREAT MEADOW CORRECTIONAL FACILITY   :
                                     :
             Respondent.             :
------------------------------------X
```
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Petitioner Leon Smith seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State Supreme Court, New York County, for robbery in the second degree. Mr. Smith argues that (1) the trial court violated his due process rights by failing to order a competency hearing sua sponte; (2) his trial counsel was ineffective for failing to request a competency hearing; and (3) the trial court violated his due process rights because its jury instructions improperly shifted the burden of proving an element of the crime to the defense. On July 6, 2006, Magistrate Judge James C. Francis IV issued a Report and Recommendation ("R&R") recommending the writ be granted. Both sides submitted objections to portions of the R&R.

For the reasons that follow, the Court adopts the R&R with respect to the recommendation that the writ be granted based on

1

the trial judge's failure to order a competency hearing, and therefore GRANTS the petition for a writ of habeas corpus.

## BACKGROUND

The facts pertinent to the determination of this petition are as follows; a more detailed exposition of the facts can be found in the R&R.

On January 2, 1997, Smith attacked Odilon Morais and took his wallet in the subway station at 96th Street and Central Park West in Manhattan. (Tr. at 137-39.) He was arrested and charged with robbery in the second degree, forcibly stealing property, and causing physical injury.

One week earlier, on December 26, 1996, Smith entered the 32nd Police Precinct in Manhattan, claiming that there were spaceships outside, that Martians were chasing him, and that his feet were on fire. (Petition for a Writ of Habeas Corpus Ex. F (Harlem Hospital Records).) Officers escorted Smith to Harlem Hospital, where he was admitted to the psychiatric unit, and he was released three days later. Upon his release on December 29, he "ran into a girl . . . [and] drunk beer that day," (Tr. at 133), and over the course of the next few days used a variety of drugs, including crack cocaine, LSD, and PCP, (id. at 133-35); as a part of his drug binge, Smith had been awake for a period of approximately 30 hours prior to the attack on Morais, (id. at

134). On the morning of January 2, 1997, Smith had been "[b]ugging out, hallucinating," (id. at 136), and entered the 96th Street subway station in an attempt to return to the 32nd Precinct to get help.

Howard Meyer, Smith's attorney, arranged for Smith to visit a psychiatrist, Dr. Robert Lloyd Goldstein, on June 10, 1997 to evaluate the possibility of an insanity defense. (Arthur Ragin, A/K/A Leon Smith Aff.[1] at 1.) Dr. Goldstein performed an examination that included a review of Petitioner's psychiatric history and a face-to-face clinical examination. (Letter from Dr. Goldstein to Howard Meyer (Aug. 27, 1997) ("Goldstein Letter") at 1.) Smith's medical records confirm that he was hospitalized shortly before his arrest at the psychiatric unit at Harlem Hospital from December 26, 1996 to December 28, 1996.

Dr. Goldstein determined that the Petitioner "led a very marginal existence, using drugs on a regular basis (e.g., cocaine, PCP and heroin) and requiring periodic institutionalization for drug-related psychotic mental breakdowns." (Goldstein Letter at 2.) In addition, Dr. Goldstein found Smith to be "a slow moving and very slow talking man, who seems to have organic brain damage" and that "[h]is speech is rambling and somewhat disorganized." (Id.) Dr.

---

[1] Petitioner testified that his real name was Arthur Ragin and not Leon Smith, the name he had given to the police when he was arrested. (Tr. at 121.)

Goldstein concluded that at the time of the robbery Petitioner was suffering from a "serious psychotic disorder" but at the time of examination, was "logical and goal directed," had "no hallucinations or delusions" and was not "acutely psychotic." (Id. at 3.)

**PROCEDURAL POSTURE**

Smith's trial began on December 3, 1997. In his opening statements, Mr. Meyer told the jury that he would call Dr. Goldstein to testify in support of the insanity defense. (Tr. at 7.) Dr. Goldstein was never called; instead, in support of this defense, Meyer called Smith to testify on his own behalf. (Id. at 123-97.) Smith was convicted of Robbery in the Second Degree.

Following trial, Smith moved to vacate the judgment pursuant to N.Y. Crim. Proc. Law § 440.10 arguing that he had received ineffective assistance of counsel. He argued that Meyer was ineffective for numerous reasons, including (1) failing to call Dr. Goldstein as an expert witness in support of Petitioner's insanity defense and (2) failing to request a competency hearing pursuant to N.Y. Crim. Proc. Law § 730. People v. Smith, Index No. 213/97 (N.Y. Sup. Ct. July 27, 2001). The trial court denied the motion without a hearing in an unpublished opinion on July 27, 2001. The court concluded that not calling Dr. Goldstein as a witness was a reasonable trial

4

strategy because placing Petitioner on the stand revealed his "extremely volatile behavior, slurred, rambling speech, and inability to intelligibly respond to questions on direct and cross-examination" and that Smith's testimony "exposed his delusional paranoia." The court decided that the claim of ineffective assistance of counsel for failure to request a competency examination was without merit, characterizing the claim as "sheer conjecture and yield[ing] pure speculation as to what would have happened." The court's determination was based largely on an affidavit submitted by Meyer, in which he described Smith as "sincere, honest and credible" during pretrial witness preparation interviews. The court also found Dr. Goldstein's report to corroborate the belief that Smith was competent, because at the time Goldstein interviewed Smith, Smith was "logical and goal directed."

On November 8, 2001, Petitioner's appeal of the denial of the § 440.10 motion and his direct appeal were consolidated. Petitioner argued that: (1) Mr. Meyer provided ineffective assistance of counsel for failing to call Dr. Goldstein to testify and failing to request a competency hearing; (2) the court erred in failing to order a competency evaluation; (3) the trial court shifted the burden of proof in its instructions on the insanity defense; and (4) Petitioner's sentence was unconstitutional.

5

The Appellate Division reversed the trial court with respect to the claim that Mr. Meyer was ineffective for failing to call Dr. Goldstein, and it remanded the case for a hearing to determine whether the failure to call Dr. Goldstein was a justifiable trial strategy or an oversight.[2] See People v. Smith, 755 N.Y.S.2d 31, 32 (N.Y. App. Div. 2003).

At the April 1, 2003 hearing, Mr. Meyer testified that he planned to call Dr. Goldstein in support of Petitioner's insanity defense but changed his mind after the testimony of Michael Narad, a prosecution witness.[3] (Hr'g Tr. at 4.) Mr. Meyer indicated he called Petitioner to the witness stand because Petitioner's testimony would be rambling and disorganized. (Id. at 13-14). In addition, Mr. Meyer indicated that he thought that Petitioner would appear to have a mental illness:

> THE COURT: When you say you thought he was credible, would it be more accurate to say you thought he would be convincing?
>
> MR. MEYER: When I say that, in other words, I was not looking for a rational, coherent witness. I was looking for a man who appeared to have a mental illness. That's why I, in spite of the misgivings I've heard in this courtroom as calling him a witness, I thought he would present himself as a persuasive,

---

[2] The Appellate Division affirmed the trial court on the other 440.10 motion claims, including ineffective assistance of counsel for failure to request a competency hearing, and held in abeyance the direct appeal. See Smith, 301 A.D.2d at 473.

[3] Mr. Narad testified that the Petitioner offered to split the contents of the wallet with him. (Tr. at 66.)

incredible[4] witness with respect to a man who has a serious mental illness. The ramblings and the fantasies and all that came out during the course of the trial through his testimony, which I thought was quite persuasive.

(Id. at 60-61.)

During the hearing, the judge commented:

What was the offer of proof on this witness? Let's be honest. The offer of proof on this witness was, "listen to him and in summation I'm going to tell you this man is delusional." And to tell you the truth, speaking out of place, maybe, that witness was pretty darn convincing to this jury. Exhibit A [Mr. Smith] was a very compelling argument of delusion. I remember him point[ing] to "In God We Trust." We were all over the place in this case. This case has left a vivid mark in my memory. I remember this testimony. I remember Mr. Smith.

(Id. at 105-06.)

The trial court denied Petitioner's motion following the hearing. People v. Smith, Index No. 213/97 (N.Y. Sup. Ct. Sept. 29, 2003.) The Appellate Division affirmed the denial of the § 440.10 motion, concluding that Mr. Meyer was not ineffective for failing to call Dr. Goldstein. People v. Smith, 4 A.D.3d 163, 772 N.Y.S.2d 34, 35 (N.Y. App. Div. 2004). The Appellate Division also affirmed the conviction on direct appeal, finding that there was no need for the trial court to order a competency hearing sua sponte; the court's charge did not shift the burden of

---

[4] In the R&R, Magistrate Judge Francis noted, and this Court agrees, that based on the context, it is likely that this is either a mistranscription or misstatement of "credible."

7

proving an element of the crime; and the challenge to the sentencing procedure was without merit.  See id. Specifically with regard to the issue of the competency hearing, the Appellate Division noted, "[w]e see nothing in the record to indicate that the trial court improvidently exercised its discretion in failing to order, sua sponte, an article 730 examination to determine whether [Smith] was competent to stand trial.  In this regard, we do not view the remarks made by the [trial] court during the CPL 440.10 hearing as an indication that the court viewed defendant as incompetent at the time of the trial."  Smith, 4 A.D.3d at 165 (internal citations omitted).  The New York Court of Appeals summarily denied the Petitioner's request for leave to appeal on June 10, 2004.

Petitioner filed the instant Petition on June 3, 2005 alleging that (1) the trial court violated his due process rights by failing to order a competency hearing sua sponte; (2) his trial counsel was ineffective for failing to request a competency hearing; and (3) the trial court violated his due process rights by improperly shifting the burden of proving an element of the crime in the jury instructions.  On July 6, 2006, Magistrate Judge James C. Francis IV issued a Report and Recommendation ("R&R") recommending the writ be granted based on the first claim.

Judge Francis found the record "ambiguous and incomplete" regarding the second claim, noting that a further evidentiary hearing could be necessary to resolve it, and concluded that the third claim is without merit. Petitioner objected to the R&R on July 19, 2006 as to the second claim. The respondent objected to the R&R on July 17, 2006 as to the first claim. Neither party objected to the R&R as to the third claim.

## DISCUSSION

**I. Standard of Review**

This Court reviews de novo any portions of the R&R that are objected to. Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985). Those portions of the R&R to which a party has not specifically objected will be adopted by the Court absent a finding of clear error on the face of the record. Id.

Petitioner's claims were adjudicated on the merits on direct appeal by the Appellate Division. Therefore, Petitioner can obtain habeas relief only if he can show that the Appellate Division's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) (2000).

A decision is an "unreasonable application" of clearly established federal law if the state court "identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it. Williams v. Taylor, 529 U.S. 362, 413 (2000). To be unreasonable, it is insufficient that the state court was "incorrect or erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Rather, the state court must be "objectively unreasonable." Id.

"Nothing in the phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process. . . . [W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." Sellan v. Kuhlman, 261 F.3d 303, 311-12 (2d Cir. 2001) (emphasis added).

## II. Due Process – Failure of Trial Court to Order a Competency Hearing Sua Sponte

Petitioner argues that the trial court violated his due process rights by failing to order a competency hearing sua sponte. The Supreme Court has long recognized that it is a violation of due process to convict a person who is legally incompetent to stand trial. Pate v. Robinson, 383 U.S. 375, 378 (1966). When the evidence "raise[s] a sufficient doubt as to a

defendant's competence to stand trial, the failure of the trial court to conduct a competency hearing sua sponte violates due process." Nicks v. United States, 955 F.2d 161, 168 (2d Cir. 1992) (citing Pate, 383 U.S. at 385).

A defendant is incompetent to stand trial if "he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." Drope v. Missouri, 420 U.S. 162, 171 (1975). "Requiring that a criminal defendant be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel." Godinez v. Moran, 509 U.S. 389, 402 (1993). Although the Supreme Court has not established a fixed standard to analyze whether a court should have conducted a competency hearing, it has identified a number of factors to consider, including attorney representations, prior medical opinions on competence to stand trial, evidence of a defendant's prior irrational behavior, and demeanor at trial. See Drope, 420 U.S. at 177 n.13, 180. Not all of these factors need to be present for a court to order a hearing, and "even one of these factors standing alone may, in some circumstances, be sufficient." Id. at 180. As the Supreme Court noted, "[t]here are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide

range of manifestations and subtle nuances are implicated." Id. Where there are numerous indicia of potential incompetence to stand trial, the Supreme Court has emphasized the importance of considering those factors in the aggregate. See id. at 179-80 ("[I]n considering the indicia of petitioner's incompetence separately, the state courts gave insufficient attention to the aggregate of those indicia in applying the objective standard of [the Missouri competency hearing statute].").

Further, the trial court's obligation to be mindful of doubts as to a defendant's competence continues throughout the trial. See id. at 181 ("Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial.").

Here, the Appellate Division's decision regarding the trial court's failure to sua sponte order a competency hearing was an objectively unreasonable application of clearly established law. To the extent that its brief opinion addressed the standard through its determination that it did "not view the remarks made by the [trial] court during the CPL 440.10 hearing as an indication that the court viewed defendant as incompetent at the time of the trial," it misstated it—a competency hearing is required if there is evidence before the trial court to raise a

12

"sufficient doubt" as to a defendant's competence, not if the court actually views the defendant as incompetent.  Although Respondent contends that this statement was simply in response to an argument made in front of the Appellate Division and not an attempt at articulating the standard, this Court's review is limited to whatever reasoning is provided in the state court's decision, and, more importantly, the ultimate decision itself. See Sellan, 261 F.3d at 311-12.

Statements made by the trial judge at a post-trial hearing, viewed in light of Smith's history of delusions and erratic behavior, are compelling evidence to demonstrate that the trial judge had sufficient doubt as to Smith's competence to require a competency hearing before further proceedings, and that both the Appellate Division and the trial judge's application of the relevant legal standards were objectively unreasonable. Speaking in reference to Smith's insanity defense, the trial judge noted that the "witness was pretty darn convincing to this jury.  Exhibit A [Mr. Smith] was a very compelling argument of delusion."  (Hr'g Tr. at 105.)  He further emphasized that "We were all over the place in this case.  This case has left a vivid mark in my memory.  I remember this testimony.  I remember Mr. Smith."  And in the order denying Petitioner's § 440.10 motion, the trial court noted his personal observations that the Petitioner demonstrated "delusional paranoia" during part of his

13

testimony, and "that the Petitioner's testimony as to the robbery, revealed extremely volatile behavior, slurred, rambling speech, and an inability to intelligibly respond to questions on direct and cross-examination." (Order of July 27, 2001 at 3, 4.) The R&R concluded, based on this record, that the trial judge found Smith to be "incoherent and unintelligible" and "delusional and irrational on the witness stand," (R&R at 15), and the Court adopts this finding based on its own independent review of the record.[5] Further, upon the Court's own review of pertinent portions of the trial testimony, it bears emphasis that Smith's testimony relating to the incident was unfocused and unintelligible; Smith's inability to coherently recount the basic chronology of the incident cast grave doubt upon his ability to assist in his defense--one of the core elements of competency.

### III. Ineffective Assistance of Counsel For Failure to Request a Competency Hearing

Smith objected to the portion of the R&R in which Judge Francis noted that a further evidentiary hearing might be necessary on the issue of ineffective assistance were the issue to be reached. However, in light of the decision to grant the

---

[5] In its objection to the R&R, the Respondent disputed Magistrate Judge Francis's characterization that Smith began crying during his testimony, noting that Smith testified that he began to cry at the police precinct. While it is true that the testimony in question does relate to crying that occurred at the police precinct and does not clearly indicate that Smith was crying at the time, the transcript does reflect that Smith's lawyer asked him to "calm down" and "take it easy" several times while relating this testimony. (See Tr. at 191.)

petition for habeas on the grounds above, the Court declines to issue what would amount to an advisory opinion on this question.

## CONCLUSION

For the reasons above, the Court adopts the R&R to the extent that it recommends granting the petition for habeas corpus based on the trial judge's failure to order a competency hearing. Smith's petition for a writ of habeas corpus is accordingly GRANTED, and his conviction for robbery in the second degree is VACATED. The State of New York, at its option, may re-try Petitioner on this count within 90 days of this Order. The Clerk of Court is directed to close this case.

SO ORDERED:

_____
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         May 19, 2008